Fortunat J. **MICHAUD**

v.

Allan L. **ROBBINS**, Warden, Maine State Prison, and State of Maine.

Civ. No. 9–50.

United States District Court
D. Maine, S. D.

Jan. 11, 1967.

Casper Tevanian, Ronald A. Wallace, Portland, Me., for petitioner.

John W. Benoit, Asst. Atty. Gen., Augusta, Me., for respondent.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

The petitioner, Fortunat J. Michaud, is serving a life sentence in the Maine State Prison for the murder of one Doris Trudeau on August 24, 1955. He was tried and convicted by a jury at the October 1955 Term of the York County, Maine Superior Court. No appeal was taken from his conviction. Eight years later, on December 5, 1963, petitioner filed with the York County Superior Court a petition for post-conviction habeas corpus relief under the provisions of what is now Me.Rev.Stat.Ann. tit. 14, §§ 5501–5546 (1964). After a full hearing, at which petitioner was represented by court-appointed counsel, the single justice on February 24, 1965 vacated the conviction and sentence and ordered a new trial. On December 13, 1965, the Supreme Judicial Court of Maine sustained the State's appeal from the single justice's judgment and remanded petitioner in execution of his sentence. Michaud v. State, 161 Me. 517, 215 A.2d 87 (1965). Petitioner has now filed in this Court a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2241 (1964), et seq. He has been permitted to proceed in forma pauperis, and counsel have been appointed to represent him.

Petitioner asserts two grounds in support of his present petition. These are: (1) that his conviction resulted in part from the State's use of a "confession" obtained from him in violation of his constitutional rights; and (2) that counsel appointed to represent him at his trial was incompetent. The parties have stipulated that petitioner has presented the federal constitutional questions thus raised to the highest court of the State of Maine, and that, having obtained an adverse ruling from that court, he has exhausted his available state remedies with respect to these questions, as required by 28 U.S.C. § 2254 (1964).[1] The parties have further agreed that petitioner's right to habeas relief in this Court be determined, without a further evidentiary hearing, upon the record of petitioner's original trial and the record of his post-conviction habeas corpus proceedings in the courts of the State of Maine.

The relevant facts are fully set forth in the opinion of the Maine court. Michaud v. State, supra at 519–526, 215 A.2d 87. Only those necessary to an understanding of the issues raised by the present petition are recited here.

On August 24, 1955, petitioner was 15 years old. He was unable to read or write and had the mental age of a 12-year-old child. He had lived with foster parents for all but the first two years of his life. On the day in question, Doris Trudeau, a child of 11 years, failed to return home at the usual hour. The City of Saco police were notified and obtained a slender lead suggesting that Doris had been seen during the day in the company of a boy answering petitioner's description. At about nine o'clock in the evening a police officer called at petitioner's home and asked him if he had seen Doris that day. Petitioner disclosed that he had been with the girl during the forenoon, and the officer then obtained his foster mother's permission to take petitioner to the police station for further questioning. He was there questioned by two officers until about midnight. Shortly after midnight he took the officers and a physician to a place in the woods where Doris' dead body was found. Upon his return to the police station at about 4:00 a. m., petitioner was questioned further by an officer of the Maine State Police. After being informed of the identity and purpose of the officer and after being warned that what he said could be used against him, he was invited to "tell the truth and nothing but the truth." Petitioner then related the events of the day. This narration was subsequently incorporated by the officers in a written confession, which was read to petitioner and signed by him at about 6:00 a. m.

During the interrogation at the Saco police station, petitioner neither asked for counsel, nor was he informed of any right to counsel. At least until after his return to the police station at 4:00 a. m., he was not told that any statements he made could be used against him. He was not during the interrogation visited by friends or relatives, although he was not "held incommunicado" as he now alleges. He was not abused physically or mentally, nor was he subjected to any force.

In due course petitioner was indicted and counsel was assigned to represent him. Prior to trial, at his counsel's request he was committed to the Augusta State Hospital for a mental examination, and during this examination he again related the details of his criminal conduct to the assembled staff of the hospital. At his trial the officers were permitted to testify to petitioner's actions in lead-

1. Other grounds asserted by petitioner in his original petition for post-conviction relief in the Maine courts were disposed of by the single justice in a manner not challenged by petitioner, and were therefore not presented to or considered by the Supreme Court. Nor are they raised in petitioner's present petition, which has been amended by counsel to allege only those contentions which were pressed in the State habeas corpus proceeding.

ing them to Doris' dead body shortly after midnight on August 25, together with the statements made by him at the time, and to his oral confession to the State Police Officer at 4:00 a. m.[2] His written confession was also received in evidence, and the Superintendent of the State Hospital testified to petitioner's narration of the day's events to the examining doctors at the hospital.[3]

## I

The sole allegation made by petitioner in support of his first contention, both here and in his state habeas corpus proceeding, is that he was induced to show the officers where Doris' body was located by a written promise of the officers that if he would confess, they would see that he was sentenced to the State School for Boys.[4] The only evidence offered by petitioner in support of this charge was his own uncorroborated testimony. His testimony was flatly repudiated by the officers concerned, and the single justice found that no such promise was given to petitioner by the officers,

2. Testimony concerning the oral confession was excluded from evidence during the early stages of the trial until petitioner's mental capacity to make a voluntary confession had been shown.

3. The record of petitioner's examination at the State Hospital was admitted in evidence only after a voir dire hearing to determine petitioner's mental capacity and the voluntary character of his admissions to the doctors.

4. Petitioner further testified at his post-conviction hearing that the officers obtained the return of the written promise from him prior to the start of his trial; that he informed his counsel of the existence of the written promise; and that it was at no time brought to the attention of the court either by the officers or by his counsel. Both the officers and petitioner's counsel denied this story, and the single justice found it to be without substance.

5. At the post-conviction hearing one of the officers testified on direct examination:

 Q To your knowledge then, the best of your knowledge—being some 9 years ago, you didn't give him or take part in drafting any written promise.

either orally or in writing. This finding was affirmed by the Supreme Court on appeal as "fully justified and supported by the evidence." Michaud v. State, supra at 525, 215 A.2d at 91. Being satisfied that petitioner received a full, fair and adequate evidentiary hearing and that the state court adequately developed and reliably found the material facts, this Court accepts the single justice's finding on this issue. See 28 U.S.C. § 2254(d) (Supp. II, 1964); Townsend v. Sain, 372 U.S. 293, 312–318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Although the finding that petitioner had proved neither an oral nor a written promise effectively disposed of the only basis asserted by petitioner in support of his contention that a "confession" was obtained from him in violation of his constitutional rights, the single justice nevertheless went on to rule, on the basis of testimony indicating that something had been said by an officer during the interrogation concerning the State School for Boys,[5] that petitioner's

A However, in all fairness to Mr. Michaud, I would like to state this: That during the course of the investigation that I did—he—he—well, he said to me in so many words, he sais (sic), "What will happen to me?" Something to that effect. And I says, "I don't really know. I know that you are a minor." I says, "I don't know if they'll send you to State School for boys, or where they'll send you. It'll be up to the courts to decide." And that's the only thing I can—
And on cross-examination:
 Q But I do understand from your testimony, Mr. McAlevy, that there was conversation that evening before you went up to the woods about a sentence to the State School, or because he was a minor the courts might treat him differently?
 A Well, he asked me and I told that, yes, I agree with that, that—he asked me, "What will happen to me?" And then that's the way I asked him. I says, "I know that you're a minor, and I realize that you're sorry for what you done." ·Etc., etc. And I says, "I don't know exactly where you'll go, whether you'll go to State School for Boys, or exactly where you go." I said this verbally to him. Nothing was written down.

conviction must be set aside because "the statement of the officer * * * undoubtedly raised in the petitioner's mind the hope that a sentence to the Boys' School might be imposed, and constituted an inducement to disclose the location of the body to the officers." On appeal, however, the Supreme Court, while accepting the single justice's factual findings, could find "no vestige of constitutional deprivation" in the officers' conduct, Michaud v. State, supra, 161 Me. at 534, 215 A.2d 87, and concluded "that the admissions of the petitioner leading up to and including the act of directing the officers to the scene of the crime were not the product of any improper inducement or coercion * * *." Id. at 540, 215 A.2d at 98.

After a thorough review of the entire record in this proceeding, this Court concurs with the Supreme Court that petitioner's constitutional rights were not violated by the receipt in evidence of the admissions made by him to the Saco police officers prior to and including his action in leading the officers to the scene of the crime.

 It is clear, as the Maine court concluded, that petitioner suffered no constitutional deprivation with respect to his rights to counsel and to silence, as those rights have been recently set forth by the United States Supreme Court in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because neither Escobedo nor Miranda is retrospectively operative. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).[6] In the language of the Court of Appeals for this Circuit,

Our task, therefore, is to apply a "substantive test of voluntariness", drawing on pre-Escobedo and pre-Miranda case law on coerced confessions, to determine whether petitioner in this case has been "found guilty by trust-worthy evidence in conformity with previously announced constitutional standards." Johnson v. State of New Jersey, supra.

Kerrigan v. Scafati, 364 F.2d 759, 763 (1st Cir. 1966).

Applying this test, this Court cannot find a shred of evidence in this record which indicates that the act of petitioner in conducting the officers to the dead body of Doris Trudeau was the product of coercion or improper inducement, or that his "will was overborne." Davis v. State of North Carolina, 384 U.S. 737, 739, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). To the contrary, the record conclusively demonstrates that petitioner's act in disclosing the location of Doris' body, and his statements at the time, were entirely voluntary. He was not at any time abused physically or mentally, or subjected to any force. He was not held incommunicado. His interrogation was of relatively short duration, and there is no evidence that he was denied food or water, or that he was in any way threatened. No promise, oral or written, was made to him. Nor, even against the background of petitioner's tender age and limited mental capacity, is there any evidence of "overbearing by police authorities." Ibid. As the Maine court noted, the "totality of circumstances" disclosed by the present record falls far short of reaching the "coercive intensity" of the "massive interrogation," Michaud v. State, supra, 161 Me. at 531, 533, 215 A.2d 87, which precluded the use of the incriminating statements obtained from the youthful defendants in cases such as Gallegos v. State of Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325, 87 A.L.R.2d 614 (1962) and Haley v. State of Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), upon which petitioner relies.

Applying the "substantive test of voluntariness," this Court concludes that petitioner's actions and statements in leading the officers to the woods were free and voluntary, and that there is no such improper inducement or coercion here as

---

6. Escobedo would not apply in any event, because no request to consult with counsel was made and refused.

to violate the "previously announced constitutional standards." Johnson v. State of New Jersey, supra.

## II

■ Petitioner's charge of incompetence of counsel can be shortly disposed of. The Maine Supreme Court,[7] after reviewing the entire trial record, could "find no evidence to support or justify such a finding," and concluded that "the quality of [counsel's] representation was certainly not such as to constitute a constitutional deprivation." Michaud v. State, supra, 161 Me. at 540, 215 A.2d at 99. This Court agrees.

■ While the United States Supreme Court has repeatedly emphasized the need for the "effective" assistance of counsel, Powell v. State of Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527 (1932), Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 86 L.Ed. 680 (1942), White v. Ragen, 324 U.S. 760, 764, 65 S.Ct. 978, 89 L.Ed. 1348 (1945), Hawk v. Olson, 326 U.S. 271, 276, 66 S.Ct. 116, 90 L.Ed. 61 (1945), the burden of establishing constitutionally ineffective counsel is a heavy one. "Mere improvident strategy, bad tactics, mistake, carelessness or inexperience do not necessarily amount to ineffective assistance of counsel, unless taken as a whole the trial was a 'mockery of justice.'" Edwards

v. United States, 103 U.S.App.D.C. 152, 256 F.2d 707, 708 (1958). "Only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking the conscience of the Court, can a charge of inadequate legal representation prevail." Schaber v. Maxwell, 348 F.2d 664, 668 (6th Cir. 1965) (and cases cited therein).

It would serve no useful purpose to recite here all the complaints of counsel's incompetence which are made by petitioner in his present petition. It is sufficient to state that upon an independent examination of the transcript of petitioner's original trial and the evidence offered by him at his post-conviction hearing this Court, being mindful of the state of the law in 1955, is satisfied that petitioner's claim that his representation was of such poor caliber as to have deprived him of his constitutional right to a fair and impartial trial is without legal or factual merit.

■ For the reasons which have been stated, this Court is of the view that petitioner has been denied no federal constitutional right by the State of Maine in either of the respects alleged by him in his present petition.[8]

It is therefore ordered that the petition is dismissed and the writ denied.[9]

---

7. The single justice, having resolved the first issue in favor of the petitioner, found it unnecessary to determine this second issue.

8. This may be an appropriate place to note that petitioner has not asserted in this proceeding that his conviction was constitutionally invalid because of the admission in evidence of the oral and written confessions made by him after his return to the Saco police station during the early morning hours of August 25 or because of the receipt in evidence of the subsequent confession made by him while being examined at the Augusta State Hospital. Nor was the issue of whether these confessions were obtained in violation of petitioner's constitutional rights presented to or determined by the Maine

Supreme Court in his post-conviction proceedings (see n. 1, supra), so that with respect to this issue, even if it were properly raised in his present petition in this Court, petitioner has not exhausted the remedies available to him in the courts of the State of Maine as required by 28 U.S.C. § 2254 (1964). The issue of whether these confessions were improperly received in evidence at petitioner's trial raises, of course, questions of fact and law quite different from those involved in determining whether petitioner was afforded the effective aid of counsel.

9. Petitioner has been ably represented throughout these proceedings by his Court-appointed counsel, Casper Tevanian, Esq. and Ronald A. Wallace, Esq., both of Portland, Maine.