Alfred COLES, Appellant,

v.

C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Appellee.

No. 10817.

United States Court of Appeals
Fourth Circuit.

Argued June 19, 1967.

Decided Jan. 8, 1968.

Craven, Circuit Judge, dissented.

———◆———

S. Strother Smith, III, Charlottesville, Va. (Court-assigned counsel) for appellant.

Reno S. Harp, III, Asst. Atty. Gen., of Virginia, (Robert Y. Button, Atty. Gen., of Virginia, on brief) for appellee.

Before SOBELOFF, WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

 Upon his claims that in his prosecution for forcible rape he was denied effective assistance of counsel at his trial, that the Commonwealth of Virginia unconstitutionally suppressed vital and relevant exculpatory evidence and that, under the circumstances of this case, the absence of counsel at his preliminary hearing constituted a denial of counsel, Alfred Coles ("petitioner") appeals from the district court's denial of his petition for a writ of habeas corpus. The writ was denied, without plenary hearing, on the basis of the transcript of a state habeas corpus hearing.[1] We agree with the district judge that another plenary hearing was unnecessary, but we conclude that the writ should issue, conditioned upon a reasonable opportunity for the Commonwealth to afford petitioner a new trial.

On May 25, 1963, petitioner was arrested for forcible rape. The testimony at the state habeas corpus proceeding showed that petitioner claimed that, in a public street, the prosecutrix, with a male companion, offered her "services" for two dollars. He and the prosecutrix adjourned to an alley where an argument ensued with regard to the time of payment to the prosecutrix. A neighbor called the police and petitioner was arrested. The prosecutrix, on the other hand, testified that petitioner had "grabbed her and dragged her down the alley" and raped her. Immediately after petitioner's arrest, the prosecutrix submitted to a medical examination, the report of which stated that slides and swabs for the presence of spermatozoa and seminal stains were both negative.

Shortly after his arrest, petitioner was granted a preliminary hearing. Va.Code Ann. § 19.1–163.1 (1960 Repl.Vol.). It is undisputed that petitioner was not represented by counsel at the hearing. Counsel was not appointed until August 20, 1963, almost three months after petitioner's arrest, when Raymond H. Dupuy, Esq. and Robert J. Smith, Esq., public defenders, were appointed to represent petitioner and *fifty-seven other defendants in other felony cases* scheduled to be tried in the then current term of court.

Petitioner was tried, non-jury, on September 17, 1963, and his conviction resulted in a sentence of twenty-five years. During the time between his appointment and the trial, Mr. Dupuy interviewed petitioner three times: once for as long as twenty minutes, again for a lesser period, and a third time briefly on the day of trial, just before the trial began. In the company of Mr. Dupuy, Mr. Smith was present during the first two interviews. He estimated the duration of the first interview to have been thirty minutes and the second something less. One of counsel for petitioner testified that petitioner admitted that he had had intercourse with the prosecutrix, and that an argument occurred between them whether he would pay in advance or upon

---

1. Petitioner sought a writ of habeas corpus from the Hustings Court of the City of Richmond. After plenary hearing the writ was denied. The Virginia Supreme Court of Appeals denied a writ of error. Available state remedies were thus fully exhausted.

completion of the act, and a woman who lived nearby had heard the commotion and called the police. Petitioner's other court-appointed lawyer testified that petitioner told his attorneys that he was *trying* to have intercourse with the prosecutrix, and that the events took place next to the house of Carrie Herbert, who heard the disturbance and called the police.[2]

■ Included among the things that counsel admitted they did not do are the following: Counsel made no investigation of the reputation of the prosecutrix for chastity. Counsel made no attempt to determine the identity of, or to interview, the prosecutrix's male companion. Counsel made no attempt to interview Carrie Herbert or to determine what her testimony would be. Counsel did not explain the elements of the crime of forcible rape to petitioner, including the necessity of proof of penetration, and question him in regard thereto. In short, counsel did no more than interview petitioner on the three occasions previously alluded to and to accept the statements he made to them during the interview. Counsel were unequivocal that they did not know that the prosecutrix had been examined medically and that they had no knowledge of the written, signed medical report.

■ To support our conclusion that petitioner is entitled to a writ of habeas corpus, we need look only to the principles to be distilled from Twiford v. Peyton, 372 F.2d 670 (4 Cir. 1967); Martin v. Commonwealth of Virginia, 365 F.2d 549 (4 Cir. 1966); Braxton v. Peyton, 365 F.2d 563 (4 Cir. 1966); and earlier authorities, and apply them to the facts of this case. The principles may be simply stated: Counsel for an indigent defendant should be appointed promptly. Counsel should be afforded a reasonable opportunity to prepare to defend an accused. Counsel must confer with his client without undue delay and as often as necessary, to advise him of his rights and to elicit matters of defense or to ascertain that potential defenses are unavailable. Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial.[3] An omission or failure to abide by these requirements constitutes a denial of effective representation of counsel unless the state, on which is cast the burden of proof once a violation of these precepts is shown, can establish lack of prejudice thereby.

Although counsel for petitioner were appointed over three weeks prior to trial, the delay of almost three months in their appointment and the fact that they were appointed to represent such a great number of other defendants to be tried at a forthcoming term of court constitutes a colorable fact.[4] Perhaps the burden of representing so many persons accused of felonies explains the woefully inadequate services rendered to petitioner. Whatever the reason, the services of counsel were ineffective in at least several regards.

■■ The record is clear that counsel did not explain the elements of the crime of rape to petitioner, especially the

2. The state habeas corpus judge accepted the testimony that petitioner had intercourse with the prosecutrix and, for reasons not disclosed, rejected the testimony that petitioner was *trying* to have intercourse with the prosecutrix. From this premise, he reasoned that petitioner was not prejudiced by the omissions of his counsel, described in the text. The district judge, in dismissing the application made to him simply stated that the state court judge "reliably made findings of historical fact and applied correct principles of law."

3. As we stated in Jones v. Cunningham, 313 F.2d 347, 353 (4 Cir. 1963), " * * * it is not for the lawyer to fabricate defenses, but he does have an affirmative obligation to make suitable inquiry to determine whether valid ones exist."

4. The record does not disclose the precise duration of a term of court, but there is a suggestion that there are three or four terms of court annually, excluding any possible summer recess.

element of penetration. If the recollection of one of petitioner's counsel was accurate that petitioner was "trying" to have intercourse with the prosecutrix, penetration may not have occurred, in which event, under Virginia law the substantive crime would not have been committed. McCall v. Commonwealth, 192 Va. 422, 65 S.E.2d 540 (1951). Effective representation of counsel would require exploration of this possibility under the facts of the case.

 Virginia law also interposes consent as an absolute bar to a prosecution for rape when the alleged victim is over the age of consent, and previous want of chastity is relevant and probative evidence of consent. Bailey v. Commonwealth, 82 Va. 107 (1886); Va.Code Ann. § 18.1–44 (1960 Repl.Vol.). Even if counsel were satisfied that lack of penetration was unavailable as a defense, effective representation would require some investigation of the reputation of the prosecutrix for chastity under the facts of this case, especially when petitioner's version of the incident, as understood by both of his counsel, was that he had an encounter with a common street walker. Effective representation would similarly require some investigation to determine the identity of, and some attempt to interview, the male companion of the prosecutrix and some attempt to interview Carrie Herbert to ascertain if evidence to support a defense of consent could be uncovered. Similarly, some inquiry should have been made to ascertain if the prosecutrix were medically examined, not only because the report which was in existence would be proof supporting a lack of penetration,[5] but also because the report disclosed the identity of the medical examiners from whom inquiry could be made as to whether their examination disclosed the presence or absence of signs of physical violence on the person of the prosecutrix with its direct relevance to the question of consent.

These omissions and failures satisfy us, in the absence of affirmative proof of lack of prejudice, that petitioner was denied effective assistance of counsel and that he should be granted a writ of habeas corpus for his discharge unless the Commonwealth, within a reasonable period to be fixed by the district judge, affords him a new trial. In the light of this conclusion, we need not discuss the contention that petitioner's rights were unconstitutionally impaired by the failure of the prosecuting authorities to disclose the existence or contents of the medical report to petitioner's counsel. In the event of a retrial, the existence and contents of the medical report are now disclosed, as are the identity of the examiners to whom further inquiry may be directed.

 We add only that, even under the circumstances of this case, petitioner's contention that there was a fatal error in the failure to provide him with counsel at the preliminary hearing is foreclosed by our decisions in Vess v. Peyton, 352 F.2d 325 (4 Cir. 1965), cert. den. 383 U.S. 953, 86 S.Ct. 1215, 16 L.Ed.2d 214 (1966), and Ward v. Peyton, 349 F.2d 359 (4 Cir. 1965).

Reversed and remanded.

CRAVEN, Circuit Judge (dissenting):

The court today puts upon the Commonwealth of Virginia what is to me a new and erroneous rule[1] as to burden of proof, not supported by prior decisions of this or any other circuit. Except for the shift in the burden of proof the court's decision that the performance of Cole's trial counsel was constitutionally

---

5. Virginia law does not require proof of emission as an element of the crime of rape, although it recognizes negative proof of emission as a strong circumstance indicating lack of penetration. McCall v. Commonwealth, 192 Va. 422, 65 S.E.2d 540 (1951).

1. The majority states the rule to be that failure to abide by certain "requirements" constitutes a denial of effective representation of counsel "unless the state * * * can establish lack of prejudice thereby." Whether the rule is correct or not depends upon what is meant by "requirements" as discussed infra.

ineffective would be demonstrably erroneous—which perhaps explains the expedient of adopting the new rule for this case. I do not suggest that courts are never justified in shifting burdens of proof. Where the facts are within the knowledge or reach of an adversary and not readily attainable by the other side, it is sometimes only just to do so. Cf. Chambers v. Hendersonville City Bd. of Educ., 364 F.2d 189 (4th Cir. 1966). But where that is not so I think federal courts should not tamper with well established state rules of procedure—absent some compelling reason not suggested in this record.

Virginia has what may be termed a homemade version of a public defender system. Mr. Dupuy and Mr. Smith were designated public defenders for three terms of court extending over a three-months period and assigned the responsibility of representing 57 indigent defendants during those three terms of court. The practice of the Hustings Court of the City of Richmond was to appoint private counsel for a period of time. Both Mr. Dupuy and Mr. Smith interviewed Alfred Coles and other indigents assigned to their responsibility, but it was never contemplated that both would actually appear for him and represent him at his trial. Instead, it was the practice that Mr. Dupuy would represent a given indigent in one court while Mr. Smith would represent another one in another division of the court. Although the state court order authorizing the representation of indigents by Mr. Dupuy and Mr. Smith was entered on August 20, 1963, both Dupuy and Smith testified that they actually began their duties in June of 1963, and the record is clear that Coles was represented as early as June 13 when a motion was made to have a psychiatric examination made of him. Dupuy interviewed Coles twice prior to the trial and again on the trial date. Smith participated only in the first two interviews. Dupuy represented Coles at the trial and Smith was not present.

I do not think the foregoing fact situation supports an inference that the system was constitutionally inadequate,[2] nor do I understand the court to so hold. Since Dupuy and Smith, in effect, divided the load, the result is that each one had a trial burden of 28 or 29 criminal cases spaced over a three-months period in three different terms of court. Although a heavy burden, it does not seem to me to be one so heavy that it can be said that effective representation was impossible or even improbable.

As for Mr. Dupuy's conduct of the trial, the majority seems quite certain that he did those things he ought not to have done and left undone things that he should have done *to the extent that Coles was denied the right to counsel.* As shown below, such certitude is based in part upon relieving Coles of his proper burden of proof, thus enabling the court to implicitly assume some rather startling facts. I do not think the admitted imperfections, although serious, amount to a denial of counsel.

ERRORS AND OMISSIONS OF COUNSEL

(1) Counsel did not explain the elements of the crime of forcible rape to Coles, including the necessity of proof of penetration. But Dupuy testified that Coles, 28 years old, admitted to him "that he had had intercourse with the woman," and this testimony is uncontradicted.[3]

---

2. Not that it is the best. See generally, ABA Project on Minimum Standards for Criminal Justice, Providing Defense Services (Tentative Draft 1967).

3. Apparently Coles himself so testified at the trial and joined issue with the prosecuting witness on whether it was rape or prostitution. There is nothing to suggest an issue of penetration except the testimony of Smith, who disparaged his own notes, saying he could read them more clearly two years ago, but that "according to my recollection, his version was that he kept trying to do it, and that he was in the act of trying—whether or not there was any penetration, I don't recall whether he said or whether he even knew because my notes say here that he just kept trying to do it and that he was exposed." Coles also admitted to Witness Vann that he had intercourse with prosecutrix.

Since the majority concedes in footnote 2 on page 226 that the state habeas corpus judge accepted this testimony, that should be the end of the matter. 28 U.S.C.A. § 2254 as amended Nov. 2, 1966. The court concedes that counsel has no duty to fabricate a defense.

(2) Counsel made no attempt to interview Carrie Herbert or to determine what her testimony would be.[4] The record does not indicate that Mrs. Herbert testified to anything other than that she heard a disturbance and screams and called the police. It was dark in the alley near Mrs. Herbert's house and she apparently saw nothing. Since screams and a disturbance are as consistent with Coles' version as with the prosecutrix's version, Mr. Dupuy's omission does not seem to me to be of any consequence.

(3) Counsel made no attempt to determine the identity of, or to interview, the prosecutrix's male companion. Was there such a person? No one said so—except Coles—and he offered Mr. Dupuy no suggestion for finding him. Nor did Coles suggest to Mr. Dupuy the names of possible witnesses who might be subpoenaed. When Dupuy was asked at the state post-conviction hearing whether he made any investigation concerning this phantom[5] witness, he gave what seems to me to be a sufficient answer to exonerate him of ineffective representation:

"I didn't make any investigation because he [Coles] didn't know who he was. Nobody that I heard of knew anything about him and I might as well have gone to India to pick out somebody."

(4) Counsel made no investigation of the reputation of the prosecutrix for chastity.[6] Unquestionably, representation might have been more effective had such an investigation been made. It was not done and has not been done to this very hour.[7] But it is much easier for my brethren to suggest necessity for such an investigation than it is to make one. This is not a case where the defendant suggests to counsel the names of male persons who might be willing to testify to the prosecutrix's promiscuity. Indeed, the record is bare of any suggestion that there existed anyone who would give her a bad character. Under these circumstances, Dupuy's omission does not seem to me to be so gross as to amount to ineffective representation by counsel.[8]

The foregoing are the counts of the indictment leveled by the court against Mr. Dupuy. Without knowing whether *in fact* the petitioner Coles was prejudiced by Mr. Dupuy's omissions, I am unwilling to hold that Dupuy's representation was so woefully inadequate[9] as to amount to a denial by the state of Coles' right to counsel. I am unwilling to assume as the court does (by its technique of switching the burden of proof) that (1) Carrie Herbert's testimony would have been different and more favorable had she been interviewed before trial; (2) there *was* a male companion whose

4. The court's new burden of proof enables it to assume that her testimony would be favorable to Coles.

5. Again the court's new burden of proof enables it to assume there was such a witness.

6. Aided again by its new burden of proof, the court is enabled to assume the reputation was bad.

7. If this proves that Mr. Dupuy was ineffective, it would also prove the ineffectiveness of Coles' post-conviction hearing counsel (a different lawyer)—except for the court's switch of the burden of proof.

8. The court seems to assume in regard to omissions (3) and (4) that a lawyer's duty of case investigation includes activity as a sleuth. I am aware of no such consensus of opinion, although it is true that Perry Mason sometimes acts as his own gum-shoe. I do not understand that we have before us the question of whether a state's duty to provide counsel may include a duty to provide an investigative staff. See ABA Project on Minimum Standards for Criminal Justice, Providing Defense Services 23 (Tentative Draft 1967).

9. The usual standard is well stated in Schaber v. Maxwell, 348 F.2d 664, 670 (6th Cir. 1965).

testimony would have been favorable; (3) prosecutrix's reputation for chastity was bad.

Switching the burden of proof does not make these startling defenses true but it does put upon the state the exceedingly awkward, if not unbearable, burden of proving the negative. And it is not suggested that the state can prove the negative of such matters more easily than petitioner can prove the positive—the usual reason for switching the burden. Nor do these matters, in my opinion, fall within the category of constitutional defects that must be deemed inherently prejudicial because (1) we intuitively sense prejudice, and (2) the extent of it is simply not practicably susceptible to proof, such as (a) failure to have counsel assigned,[10] (b) appointment of counsel followed immediately by trial,[11] (c) division of responsibility among an entire bar (what's everyone's responsibility is no one's responsibility).[12] Except in such situations, and others of like kind, it is still true that "in most cases involving claims of due process deprivations we require a showing of identifiable prejudice to the accused." Estes v. State of Texas, 381 U.S. 532, 542, 85 S.Ct. 1628, 1632, 1633, 14 L.Ed.2d 543 (1965). I think the correct rule is that the burden of showing lack of prejudice falls on the state when, *but only when,* the petitioner has shown a set of facts that demonstrate prejudice to his defense, inherently or otherwise.

I do not read the court's opinion as charging to Dupuy his ignorance of the existence of the medical report of the examination of prosecutrix. Apparently the majority shares my doubt that every "effective" lawyer in Richmond knew or should have known, prior to this case, that it was the uniform practice of the Richmond Police Department to have such a medical examination conducted of every woman who claimed to have been raped. Had Mr. Dupuy known of the report, I think it only fair to him to suggest that he would then have felt justified in raising a defense of non-penetration in spite of the admissions made to him by his client and apparently repeated in open court.

In Cardarella v. United States, 375 F. 2d 222 (8th Cir. 1967), the prisoner urged that he was entitled to a new trial because his lawyer should have known of or discovered the existence of certain police reports. In dismissing the contention, the court said: "Even so, 'lack of diligence' in discovering evidence which was not used at the trial is not necessarily to be equated with ineffective assistance of counsel. Perfect or errorless counsel is not required as a prerequisite to a fair trial consonant with due process." Id. at 232.

If the medical report is deemed to be exculpatory, and certainly its thrust is in that direction, and if the state suppressed or withheld it, there would appear to have been a violation of due process sufficient to require a new trial. See 21 Am.Jur.2d Criminal Law § 225. But the court quite properly does not reach that question for it was not presented to the state habeas corpus court, nor was error in that respect assigned on appeal to the Supreme Court of Appeals of Virginia.[13]

Although I agree that we should not grant relief on a sufficient ground not presented to the state courts, I cannot but regret that we do not, at the very least, postpone decision to afford the Virginia courts the opportunity to consider this question. I strongly suspect that if we waited there would then be no occasion for today's decision which makes it seem to me even more unjustifiable.

10. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

11. Twiford v. Peyton, 372 F.2d 670 (4th Cir. 1967); Martin v. Commonwealth of Virginia, 365 F.2d 549 (4th Cir. 1966); see also, Turner v. State of Maryland, 318 F.2d 852 (4th Cir. 1963).

12. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

13. The brief on appeal is said to have mentioned it.