Filed 7/17/24  P. v. Reyes CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANDRES ESTUARDO RECINOS REYES,<br><br>    Defendant and Appellant. | B322328<br><br>(Los Angeles County<br> Super. Ct. No. PA093232) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  David Walgren, Judge.  Affirmed.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Andres Estuardo Recinos Reyes appeals from his conviction by jury of six felony sex offenses. He contends the court erred in failing to grant his request to substitute counsel and that his appointed counsel provided ineffective assistance.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

For several years defendant lived in the same home as his half sister, P.D., a minor who was 12 years younger than defendant. P.D. testified that defendant repeatedly sexually assaulted her (as often as several times a month), starting when she was four years old. The acts usually consisted of defendant "dry humping" P.D. (laying on top of her with his clothes on and "grind[ing]" his pelvis against hers), inserting his fingers into her vagina or orally copulating her. P.D. did not resist because she was afraid of defendant and he threatened to rape her if she did.

When P.D. was 12, her mother told her they were going to be moving out and it gave P.D. the courage to resist defendant. Defendant was angry. After P.D. and her mother moved out of the home, defendant exchanged numerous text and Instagram messages with P.D. acknowledging his conduct, claiming that P.D. liked it, insulting and threatening P.D., and demanding that she delete all the messages. Portions of the messages were played for the jury.

At the age of 17, P.D. learned that her five-year-old nephew would soon be living in the same home as defendant, and she was concerned that defendant might start molesting him. P.D. made the decision to report what defendant had done to her. After being interviewed by the police, P.D. agreed to make a recorded phone call to defendant. During that call, defendant told P.D. to lie to the police.

2

When defendant was interviewed by the investigating detectives, he made various admissions about "humping" P.D. and also blaming her, claiming that she initiated the contacts sometimes.

Defendant was charged with 16 felony counts:  five counts of oral copulation or sexual penetration with a child 10 years old or younger (Pen. Code, § 288.7, subd. (b); counts 1, 3, 5, 7 & 9), seven counts of lewd act upon a child 14 years old or younger (§ 288, subd. (a); counts 2, 4, 6, 8, 10, 13 & 16), two counts of oral copulation of a child under the age of 14 and more than 10 years younger than defendant (§ 288a, subd. (c)(1); counts 11 & 14) and two counts of sexual penetration of a child under the age of 14 and more than 10 years younger than defendant (§ 289, subd. (j); counts 12 & 15).  Counts 1 through 10 were alleged to have occurred when P.D. was between six and 10 years old.  Counts 11 through 16 were alleged to have occurred when she was 11 and 12 years old.

On January 31, 2022, defendant made his first request to substitute counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118.  The court cleared the courtroom, explained to defendant how a *Marsden* hearing is conducted and assured him he could speak freely as the record of the proceedings would be sealed and kept confidential.  Defendant said he had been waiting a long time to go to trial and his attorney did not have a good plea offer for him, complaining that it was always the same offer of 32 years. Defendant also said he wanted to see the discovery produced by the prosecutor, even though "there could be consequences" to having the documents in his cell.

Deputy public defender Anna Brief told the court she had represented defendant for less than a year, having been assigned the case when the attorney previously assigned to defendant's case went out on leave.  Ms. Brief said she understood that defendant

had waived a fair amount of time in order to be able to have the previous attorney return to try the case. Ms. Brief said however that once the previous attorney did return from leave, their supervisor refused to reassign the case back to previous counsel. Ms. Brief clarified that the 32-year offer by the prosecutor that defendant had rejected was no longer on the table, but that she was negotiating to get a new offer pretrial. On the issue of discovery, Ms. Brief said she would not allow copies of discovery to be held by an in-custody client like defendant because of the risk of other inmates getting the documents and fabricating a story that defendant had confessed to them. She was also concerned about copies of discovery getting into the hands of third parties because of the personal and private nature of the charges involving a minor victim.

The court explained to defendant that he was facing multiple felonies, some of which carried life terms, and that the 32-year offer was what the prosecutor was willing to offer in light of that exposure and not the fault of Ms. Brief. The court also told defendant that having discovery files in his cell was extremely risky as another inmate could see them and then, using the facts gleaned from those records, falsely claim he had confessed to the crimes. Defendant told the court he could give the records to his uncle. Ms. Brief said she was concerned defendant could waive attorney-client privilege by allowing third parties to see any case materials. The court denied defendant's motion.

Defendant renewed his request to substitute counsel on April 4, 2022. Defendant raised the same two concerns that he raised initially. He said he did not think it was fair that he was only being offered 32 years as a plea deal, that it was a sign of "corruption," and that he wanted his discovery materials which he believed he could keep private even though he slept in an area with

4

96 other inmates. Ms. Brief reiterated her concerns about releasing materials to defendant because of the potential for other inmates to see them. She also said again that she was trying to be honest with defendant about his exposure in light of the numerous charges and the admissions he had already made, and that she could not be dishonest and just tell him what he wanted to hear. The court again denied the motion.

Defendant's third *Marsden* motion was made on April 28, 2022. Defendant based his request on the same two issues. He said Ms. Brief was "not giving [him] any hope." Ms. Brief told the court that she had asked a colleague in her office who had just handled a similar case to come speak with defendant and explain to him what was at stake, hoping defendant might be receptive to hearing an assessment from another attorney. Ms. Brief did not believe that had helped defendant in making a decision about considering a plea or proceeding to trial. The court told defendant that it was Ms. Brief's job to be forthright with him and that the fact she was telling him some "hard truths does not make her an ineffective lawyer." The motion was denied.

The case proceeded to a jury trial. The jury found defendant guilty on counts 11 through 16 and was unable to reach a verdict on counts 1 through 10. The court declared a mistrial on counts 1 through 10 and set a new pretrial conference on those counts. Defendant's request to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806 was granted.

At the sentencing hearing on counts 11 through 16, the court imposed an 18-year prison sentence, calculated as follows: an eight-year upper term on count 11, plus consecutive two-year terms (one-third the midterm) on each of counts 12 through 16. Defendant was awarded 1,192 total days of presentence custody credits (1,037 actual, 155 conduct).

This appeal followed.

## DISCUSSION

**1.    The *Marsden* Motions**

Where, as here, a defendant moves to substitute his appointed counsel pursuant to *Marsden*, he is entitled to the requested relief " ' "if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." ' " (*People v. Ng* (2022) 13 Cal.5th 448, 500.)  We review a trial court's denial of a *Marsden* motion under the deferential abuse of discretion standard.  (*Ng,* at p. 500.)  Denial is not an abuse of discretion unless the defendant demonstrates " ' "that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel." ' " (*Ibid.*)  We find no abuse of discretion in the court's denials here.

Defendant says that his counsel was unable to identify any defense so he needed copies of the discovery materials to review and to discuss with counsel in preparing for trial.  In support of his argument that this failure by counsel warranted *Marsden* relief, defendant cites one case on ineffective assistance, *Coles v. Peyton* (4th Cir. 1968) 389 F.2d 224 (*Coles*), and to one passage during the second *Marsden* hearing where counsel explained how difficult she expected trial to be given defendant's numerous admissions in the text messages to the victim, during the phone call with the victim and during his pretrial interview with police.

*Coles* does not support defendant's contention.  There, the court faulted appointed counsel for failing to discuss with the defendant the elements of the crime of rape under Virginia law, which required penetration.  (*Coles, supra*, 389 F.2d at pp. 226–227.)  The defendant had apparently described his interaction with

6

the victim as " 'trying' to have intercourse" and the failure of counsel to explain the law and explore the possibility of there having been no penetration deprived the defendant of a potentially viable defense. (*Id*. at p. 227.)

Here, counsel did not fail to discuss the case with defendant but told him he could not have copies of records to take back to his cell because of the risk of a jailhouse snitch getting them, and defendant did not like counsel's assessment of how difficult trial was going to be in light of his admissions. The trial court correctly assessed that defendant had not shown Ms. Brief was failing to effectively represent his interests. (*People v. Taylor* (2010) 48 Cal.4th 574, 600 (*Taylor*) ["trial court reasonably could find that counsel had properly refused to provide defendant with the police reports in his case because of concern the documents would fall into the hands of a would-be jailhouse informant who might use the police reports to fabricate evidence against defendant"].) Moreover, defendant has not cited any law supporting his contention that the trial court should have ordered counsel to show him the discovery in a controlled setting in lieu of allowing him copies to keep in his cell.

Defendant also says there was a complete breakdown in the attorney-client relationship. For instance, he says counsel's refusal to allow him copies of his discovery was not out of concern it would prejudice his case but because counsel believed it would inconvenience her, making her job more difficult. This assertion has no basis in the record. Ms. Brief was plainly concerned about enabling a jailhouse snitch who got access to defendant's files to create a false confession, and she wanted to avoid prejudicing defendant's position at trial. The record supports the trial court's finding that Ms. Brief was providing competent representation by protecting defendant's interests and being forthcoming with him

7

about the pros and cons of going to trial despite his feelings about her.

Defendant also said he felt "intimidated" by Ms. Brief because she did not give him any hope for trial. Ms. Brief aptly explained that it was her job to give defendant an honest assessment and not simply tell him something he wanted to hear. Defendant's vague and generalized claim of not feeling "hope" does not demonstrate counsel was providing ineffective assistance. (*Taylor*, *supra*, 48 Cal.4th at p. 600 ["The mere ' "lack of trust in, or inability to get along with," ' counsel is not sufficient grounds for substitution."].)

## 2.    The Ineffective Assistance Claim

Defendant contends he was "actually and constructively" denied counsel because the deterioration of their relationship resulted in counsel's failure to provide any factual defense to the jury, including during closing argument. Defendant cites *United States v. Cronic* (1984) 466 U.S. 648 (*Cronic*) for the proposition that reversal is required here because counsel did not function as a meaningful adversary to the prosecution.

*Cronic* held that where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." (*Cronic, supra,* 466 U.S. at p. 659.) The record does not support the application of *Cronic* here. Defense counsel cross-examined P.D. regarding the details of when and how the charged acts occurred. In closing argument, defense counsel chose not to highlight any facts but rather implored the jury to abide by the jury instructions and hold the prosecution to its burden of proving "each and every element" of each count beyond a reasonable doubt. After the jury submitted a question seeking clarification of the instruction regarding direct and circumstantial evidence, both sides provided supplemental argument. Defense

8

counsel told the jury to focus on the evidence and whether the victim explained all the acts "with sufficient clarity and specificity to cause you to believe beyond a reasonable doubt that all of these acts happened." After deliberating further, the jury was able to reach a verdict on counts 11 through 16, but were hung on counts 1 through 10. These proceedings support our conclusion that defendant was not actually or constructively denied effective assistance of counsel.

Defendant also says counsel was ineffective for failing to disclose the discovery materials to him and in failing to challenge the admission of his pretrial statement to police. He says he was not read his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 before he was interviewed. The probation report indicates defendant waived his *Miranda* rights and agreed to speak with the police.

The "two-prong standard governing claims of ineffective assistance of counsel is well settled. ' " 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome.' " ' " (*People v. Johnson* (2016) 62 Cal.4th 600, 653 (*Johnson*); *Strickland v. Washington* (1984) 466 U.S. 668, 688, 693–696.)

Attorneys have broad discretion in deciding trial tactics and in choosing "the means by which to provide constitutionally adequate representation" to their clients. (*Johnson, supra,* 62 Cal.4th at p. 653.) Attorneys are entitled to a presumption that their "performance fell within the wide range of professional competence and that [their] actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the

9

burden of establishing constitutionally inadequate assistance of counsel." (*People v. Gamache* (2010) 48 Cal.4th 347, 391.)

The record on appeal usually does not contain any explanation of the attorney's strategy. (*Johnson*, *supra*, 62 Cal.4th at p. 653.) For this reason, the Supreme Court "long ago adopted the rule that ' "[i]f the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal. [Citation.]" ' [Citations.] The merits of such claims are more appropriately resolved, not on the basis of the appellate record, but rather by way of a petition for writ of habeas corpus." (*Ibid*.)

The record here is inadequate to assess defendant's claims of alleged ineffective assistance of counsel.

## DISPOSITION

The judgment of conviction is affirmed.


GRIMES, J.


WE CONCUR:



STRATTON, P. J.



VIRAMONTES, J.