STATE of Missouri, Respondent,

v.

Rodger Lee McQUEEN, Appellant.

No. 51211.

Supreme Court of Missouri,
Division No. 3.

July 18, 1968.

Rehearing Denied Sept. 20, 1968.

Lashly, Caruthers, Rava, Hyndman & Rutherford, William I. Rutherford, Erwin S. Barbre, St. Louis, for defendant, appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, Walter S. Drusch, Jr., Asst. Atty. Gen., Cape Girardeau, for respondent.

J. DONALD MURPHY, Special Judge.

The defendant was convicted of murder in the second degree in the Circuit Court of the City of St. Louis on October 2, 1964, and sentenced to imprisonment for life.

The conviction was affirmed by Division One of this court (State v. McQueen, 399 S.W.2d 3) but the affirmance was set aside because the defendant, an indigent, was not furnished counsel upon appeal. Able counsel, appointed by the trial court, has now briefed and argued the case anew, alleging errors neither raised in the motion for new trial nor considered by this court on the prior hearing.

Defendant now contends that the trial court erred in failing to instruct the jury that the use of reasonable force to prevent an attempt to commit an act of sodomy upon the person of the defendant was justifiable homicide, and that such failure was plain error affecting substantial rights of the defendant and resulting in "manifest injustice or miscarriage of justice" under Supreme Court Rule 27.20(c), V.A.M.R. No such instruction was requested in the trial court nor was the point preserved for review in the motion for new trial. A self-defense instruction in the usual form was given, stating that if the defendant "had reasonable grounds to believe and did believe that George C. Francis was about to take his life or do him some great personal injury—and that it was necessary for him to use force in order to protect himself from such danger" he should be acquitted on the ground of self-defense. Only the details of the homicide necessary for a determination of this alleged error need be restated.

The defendant shot and killed one George Francis on October 23, 1963, in the latter's apartment in the City of St. Louis. Death was caused by three gunshot wounds. According to the defendant he and the deceased had been acquaintances prior to the time the defendant served a term in the Missouri Penitentiary in 1962 and 1963 for the offense of obtaining a narcotic drug under false pretenses. He testified he had been in the home of the deceased as many as fifty times and had associated with him socially. Francis had on occasion supplied the defendant with narcotics, to which the latter at the time was addicted. There was

evidence from defendant and from a witness for the prosecution that Francis was a homosexual. Defendant denied using any narcotics subsequent to his release from the penitentiary and also denied that he was a homosexual. Within days after defendant's release from the penitentiary he met Francis and was subsequently invited to the latter's apartment to talk about a job for defendant. The defendant testified he went to the apartment of Francis about 11:30 p.m., October 22, 1963; that Francis answered the door and told him that one Donald Cole, described by the defendant as the "lover" of the deceased, was visiting him and asked that he return the following morning; that defendant then left the apartment and returned as requested about 7:15 a.m. the next day; that deceased answered the door and was "wobbling over the hallway like he had too much to drink" and was "evidently upset"; he "was evidently mixing vodka and coffee together"; that deceased "was talking about killing himself over a quarrel he had with Cole the night before" and that when they went upstairs to the bedroom of the deceased he saw a pistol on the dresser.

Defendant further testified as follows:

"I thought I had him talked out, you know, raving and screaming and everything. And he stated—he looked at me kinda' funny and he says, 'It is all your fault.' I said, 'All my fault for what?' He says, 'Because Cole is mad at me.' I said, 'Well, I don't see how it is my fault. I haven't did anything, you know.' So he said, 'Cole don't want me to get you a job.' I said, 'Well, that is up to you, you know,' and he said, 'Cole don't want me to see you. He is very jealous because you are not one of us.' I said, 'Well, I can't help that. I knew you quite a while now. And if you are going to do me a favor,' I says, 'if you can't do me a favor, don't be wasting my time and yours.' I said, 'I don't even have enough money for bus fare. I would like to get a job pretty soon. I have just been out of prison for twenty-seven days.' He informed me that Cole would raise quite a commotion about me coming at that time of the night before 12 o'clock at night, and that he had left that morning, he was very mad and upset with Francis and me, and he kept looking at me and he said, 'It is your fault, all your fault. If it wasn't for me trying to do a favor for you or something, all this wouldn't have come about, you know.' And then I said, 'Well, you have just been drinking too much. Forget it and go on to work.' Well, he bent over like he was going to take off—took off one of his shower shoes, like he was going to put on his sock. He was kind of like in a stupor or something trying to put his sock on, you know. And he had one of these shoehorns. You have seen these long shoehorns with—for a lazy man getting his shoes on, tall, have a catch on about this long (indicating). And he says, 'I ought to just bust your head for putting me in that position.' I said, 'Now, wait a minute. You just forget about this,' I says, 'You have been drinking too much and taking them pills and everything. Just let me—' I said, 'Forget about the job; forget about everything, and I'll leave and I'll go on out.' He said, 'No, you are not going to leave.' He said, 'You are in my house. I am going to do with you what I want.' He reached over and grabbed my hand. He said, 'If I can't have Cole, I am going to have you.' He grabbed my hand and tried to put it on his private parts. And when I jerked my hand back I jerked off the bed trying to get him back away. So then he had that shoehorn in his hand and just kept coming at me."

The defendant further testified that the shoehorn was about two feet long and made out of shiny iron; that Francis kept coming at him; that he, the defendant, was nervous and "scared"; that Francis "commenced talking about suicide, taking his life and his lover left him and all that"; that he, the defendant, picked up the gun from

the dresser and moved toward the door. He testified further:

"I told him, 'George, you are high. Forget it.' And I seen him. He was just like a madman, crazy, all I could think. And he kept coming at me with that thing. I remember squeezing the trigger and backing out of the door, and he kept coming straight at me."

According to the defendant the deceased was eight to ten feet away when the first shot was fired, three feet away at the time of the second, and "right on top" of defendant at the time of the third, with the shoehorn raised over his head. The defendant was "right at the threshold" of the room when he fired the third shot. There was testimony that the defendant weighed 135 to 140 pounds and the deceased over 200 pounds. After the shooting the defendant took some narcotic pills and sticks of marijuana and a watch belonging to deceased from the top drawer of a dresser, and left the apartment. According to defendant the fly of the deceased's slacks was not open and there was no evidence that deceased attempted any sexual assault upon defendant other than as related by the defendant in the language above quoted.

■ The question is whether under this evidence an instruction was required on the right to use reasonable force to prevent an attempted act of sodomy. If it was we hold the requirement to be a part of the law of the case whether or not an instruction on the issue was requested by the defendant. Section 546.070 [1], and S.Ct. Rule 26.02; State v. Spencer, Mo., 307 S.W.2d 440, 443; State v. Ford, 344 Mo. 1219, 130 S.W.2d 635; State v. Rose, Mo., 346 S.W.2d 54; State v. Browers, 356 Mo. 1195, 205 S.W.2d 721, 722.

Section 559.040 reads in part as follows:

"Homicide shall be deemed justifiable when committed by any person in either of the following cases: (1) In resisting any attempt to murder such person, or to commit any felony upon him or her * * *."

Sodomy is a felony under our statute. Section 563.230.

In State v. Robinson, Mo., 328 S.W.2d 667, a homicide case, the court held that the defendant therein was entitled to have submitted to the jury as a defense the right to use reasonable force to prevent the commission of an act of sodomy upon his person and that a self-defense instruction in the usual form submitting the use of reasonable force to prevent great personal injury or great bodily harm was not in compliance with this requirement. The court said:

"Whether or not such defense was true or false was a question for the jury under proper instructions. The defendant's theory should have been included in the self-defense instruction. * * * The defendant was entitled to an instruction submitting to a jury his theory of justifiable homicide which theory was supported by evidence,"

citing § 546.070, subsection (4). In the Robinson case the evidence of the defendant, if believed, did establish an attempted sodomitical attack and the defendant did request and was denied an instruction based on this defense.

■■ The defense against an attempted felony—in this case sodomy—is analogous to the usual self-defense. Both are forms of justifiable homicide. § 559.040. And the quantum of proof necessary to support or require the giving of an instruction thereon is the same. State v. Robinson, supra; Washington U.L.Q. 353, 369 (June 1963). This quantum of proof has been variously defined as "substantial evidence," State v. Rose, Mo., 346 S.W.2d 54; State v. Baker, Mo., 277 S.W.2d 627; State v. Singleton, Mo., 77 S.W.2d 80; "evidence putting it in issue," State v. Ford, 344 Mo. 1219, 130 S.W.2d 635; "any theory of innocence

1. Statutory references are to RSMo 1959, V.A.M.S.

* * * however improbable that theory may seem, so long as the most favorable construction of the evidence supports it," State v. Kinard, Mo., 245 S.W.2d 890; "supported by evidence," State v. Robinson, supra; "any theory of the case which his evidence tended to establish," State v. Stallings, 326 Mo. 1037, 33 S.W.2d 914; "established defense," State v. Sumpter, Mo., 184 S.W.2d 1005; and "evidence to support the theory," State v. Shiles, Mo., 188 S.W.2d 7.

■ We have carefully considered the record of trial and conclude that there was no substantial evidence supporting a theory that the homicide was justifiable in resisting an attempted sodomitical attack. Regrettably the defendant was not permitted at the trial to state his reason for shooting Francis (he was asked the question but an objection was sustained thereto) and we must determine from an examination of his testimony and the surrounding circumstances as shown by the evidence whether there was evidence from which the defendant could have reasonably believed that the deceased was about to commit an act of sodomy upon him. As stated in State v. Singleton, supra, in reference to self-defense:

"He must have believed that such act was necessary, and he must have had reasonable grounds for such belief (citing cases). It is not sufficient that he may have so believed. It is further necessary that he should have had reasonable grounds for such belief, and whether or not he had such reasonable grounds is generally a question for the jury. * * * But if there is no evidence from which it could reasonably be found that such grounds existed—in other words, if there is no substantial evidence tending to show the existence of such grounds—we think it logically and necessarily follows that the court need not and should not submit the question to the jury." 77 S.W.2d l. c. 83.

The somewhat ambiguous words and actions of the deceased did not constitute an attempt at sodomy nor, we conclude, a solicitation. The defendant had known since 1960 that Francis had homosexual tendencies; knowing this, the defendant had been in the latter's home about fifty times in a period of about three years. There was no evidence of prior attempts or solicitations. The deceased did not indicate by words or actions the kind of sexual activity he allegedly had in mind; he did not attempt to molest sexually the person of the defendant; and he appeared to abandon, by his actions with the shoehorn, any intention, if he had such, to commit a sexual assault on the defendant.

A careful reading of the answers by the defendant on direct and cross-examination gives the overwhelming impression that the defendant, if credence is to be given to his testimony, feared a physical assault with the shoehorn and not a sexual attack. Note the following as an example:

"Q. Could you get to the door? I mean under the circumstances as you stated them to this jury, was there any way you could have gotten to the door without, in your opinion, being struck by this bootjack? A. No, I don't think so because it is too narrow. He almost had to have a swing at me because in order when I made that swing to start down the aisleway for the door I could have got hit then."

It taxes one's credulity to believe that the defendant under all the circumstances there existing could have reasonably believed he was about to be sexually assaulted. We doubt that the defendant had any such thought at the time. We conclude that there was no evidence from which the defendant could reasonably believe that an act of sodomy was about to be attempted and that an instruction on the right to defend from an attempted sodomitical attack was not necessary.

■ The conclusions above expressed make unnecessary a consideration of the defendant's contention that the failure to so

instruct was plain error which, in the exercise of our discretion, we should review under Rule 27.20(c). We observe also that assuming the failure to instruct on the right to defend from an attempted sodomitical attack was error (which we rule it was not), the failure was not, under the circumstances of this case, plain error affecting substantial rights from which we should deem that manifest injustice resulted. State v. Meiers, Mo., 412 S.W.2d 478; State v. Jackson, Mo., 411 S.W.2d 129.

The defendant next asserts that the failure of defense counsel to request an instruction on the right to defend oneself from an attempted act of sodomy and to assign the same as error in the motion for new trial amounted to inadequacy of counsel. As supportive of this assertion defendant calls attention to the fact that defense counsel in the motion for new trial mistakenly used the word "burglary" instead of "robbery" in referring to a felony-murder instruction given by the court, and further, that defense counsel in his motion for new trial apologized to the court for not referring to the instructions by number, stating that the court had not given him copies of the instructions and that he had lost the piece of paper on which he had noted the numbers of the instructions.

We consider this allegation of error under Rule 27.20(c). State v. Dean, Mo., 400 S.W.2d 413. Our ruling that the suggested instruction was not required under the evidence is sufficient answer to the allegation of inadequacy of counsel. Counsel cannot be faulted for not requesting an instruction which need not have been given. Counsel's error in using the word "burglary" instead of "robbery" in the motion for new trial we consider trivial and inconsequential. As to the failure to refer by number to the instructions defendant suggests that we may fairly infer that trial counsel did not read the instructions in preparation for filing the motion for new trial. That is a fair inference. However, a reading of the motion indicates that it was generally in proper form with sufficient particularity to preserve the alleged errors. No prejudice is shown to have resulted. A claim of inadequacy of representation must be based upon something more than isolated mistakes or oversights by the trial attorney not substantially and adversely affecting the defendant's right to a fair trial. State v. Childers, Mo., 328 S.W.2d 43; White v. State of Missouri, Mo., 430 S.W.2d 144 (handed down June 10, 1968). From an examination of the record as a whole we conclude that appointed counsel represented his client loyally, in good faith, and with considerable ability. The point is ruled against defendant.

Finally the defendant alleges that the trial court erred in excluding the testimony of defendant that a witness for the prosecution named Conrad Zoeller was a homosexual, and in instructing the jury to disregard such testimony. The testimony pertaining to the point in issue is as follows:

"Q. (By defense counsel): Was he (Zoeller) a married man? A. (By defendant) No, he wasn't, definitely not; homosexual. Q. He was what? A. A homosexual. MR. FREDERICKS: One moment. I am going to object to that comment. It is self-serving. THE COURT: It will be sustained."

Zoeller had testified that the weapon used in the homicide belonged to his sister and had presumably been stolen from her car; that he did not know Francis and had never been to Francis' apartment. Defendant had previously testified that he (defendant) knew Zoeller, and that Zoeller and the deceased were friends.

The evidence quoted above was improperly excluded on the objection as made; there is doubt that the testimony was actually self-serving in the ordinary sense, but in addition to that, the rule excluding self-serving statements applies only to out-of-court statements. Johnson v. St. Louis Public Service Co., Mo.App., 256 S.W.2d 308, 313. The statement that Zoeller was a

homosexual, without more evidence, would not establish any further connection unless rank speculation was indulged. That statement was obviously made to prejudice Zoeller in the jury's minds. We rule that the testimony thus excluded had no reasonable tendency to prove any issue in the case, that it was not admissible for any purpose, and that its exclusion could not have been prejudicial to the defendant. Furthermore, no assignment of error based on the exclusion of this testimony was specified in the motion for new trial, as required by S.Ct. Rule 27.20(a). Under the circumstances, there is no point in considering the contention that the exclusion of the testimony should be ruled by the court as plain error under Rule 27.20(c), for we have held that its exclusion was nonprejudicial.

We adopt our opinion on the first appeal (399 S.W.2d 3) with respect to defendant's contentions not specifically covered above. We have examined the record as required by Rule 28.02, V.A.M.R., and find no error respecting the sufficiency of the indictment, verdict, judgment, and sentence.

The judgment is affirmed.

EAGER, P. J., and KEET, Special Judge, concur.