357 F.Supp. 557 (1973)
Roger Lee McQUEEN, Petitioner,
v.
Harold R. SWENSON, Warden, Missouri State Penitentiary, Respondent.
No. 72 C 653(4).
United States District Court, E. D. Missouri, E. D.
March 9, 1973.
Roger Lee McQueen, pro se.
*558 John C. Danforth, Atty. Gen., State of Missouri, Stephen D. Hoyne, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

MEMORANDUM
WANGELIN, District Judge.
This habeas corpus action pursuant to 28 U.S.C. § 2254 was commenced in forma pauperis in the United States District Court for the Western District of Missouri and was transferred to this Court.
Petitioner is in respondent's custody pursuant to the 1964 life imprisonment sentence imposed by the Circuit Court of the City of St. Louis, Missouri. Petitioner was convicted by jury trial of second degree murder. The conviction was affirmed on direct appeal. State of Missouri v. McQueen, 399 S.W.2d 3 (Mo.1966). Since petitioner, an indigent, was not represented by counsel on appeal, the affirmance was set aside, the appeal was resubmitted with counsel appointed to represent petitioner, and the conviction was again affirmed. State of Missouri v. McQueen, 431 S.W.2d 445 (Mo.1968). On September 8, 1967, petitioner filed a motion to set aside the judgment and sentence pursuant to Missouri Supreme Court Rule 27.26, V.A.M. R., alleging, among other grounds, that he was denied effective assistance of counsel at various critical stages of the proceedings. This motion was denied in the Circuit Court and the denial was affirmed on appeal. McQueen v. State of Missouri, 475 S.W.2d 111 (Mo. en banc 1971), rehearing denied January, 1972. Petitioner next applied for a federal writ of habeas corpus. That application is now before the Court.
Petitioner herein alleges only that he was denied effective assistance of counsel and in support of this allegation recites almost verbatim the statement of facts found in his briefs before the Missouri Supreme Court, in division and en banc. Respondent's Exhibits D and F. Respondent admits, and the Court finds, that petitioner has exhausted his available state remedies.
This statement of facts is five pages in length and contains alleged errors and omissions of attorney Hale Brown, petitioner's appointed trial defense counsel, which occurred during pre-trial, trial and post-conviction periods.
Petitioner was convicted of the October 23, 1963, murder of one George Francis in St. Louis. Petitioner was arrested two days later in Kentucky. In December, 1963, he was charged with a homicide that occurred in Jefferson County, Missouri, and he was housed in the Hillsboro, Missouri, jail until transferred to the St. Louis City Jail about June 1, 1964. During the fall of 1963 attorney Brown was appointed to defend petitioner against the Jefferson County charge.
The March 17, 1964, indictment, which charged petitioner with the St. Louis murder, was endorsed with the names of thirty-nine prosecution witnesses. On September 8, 1964, two more names were added. Petitioner alleges that attorney Brown was appointed to represent him against the St. Louis murder charge on September 28, 1964; that counsel did not interview any of the prosecution witnesses; that he did not visit the scene of the St. Louis crime; and that he spent little time conferring with petitioner in preparing to defend against the St. Louis charge, having spent four-fifths of his time preparing to defend against the Jefferson County charge.
During the 27.26 evidentiary hearing petitioner McQueen, Clinton Hawkins, a Hillsboro jailmate of petitioner, and attorney Brown testified. In ruling on the 27.26 motion the Missouri Circuit Court stated:
It is contended that counsel was appointed by the Court just a few days prior to the actual trial of the cause, and that there was not sufficient time to confer with counsel nor prepare a defense.
The trial began September 28th, 1964, and resulted in a conviction as above mentioned, and the defendant *559 was represented during the trial of the case by Hale Brown. The court files show that prior to the trial in October of '64 and on March 24th, 1964, defendant was represented by Mr. Joseph Noskay of the Public Defender Office, and on March 24th was arraigned and pled not guilty. Due to another homicide charge against him he was in the Jefferson County jail at Hillsboro until June of 1964, when he was brought to the City of St. Louis and lodged in the St. Louis City Jail. The case was set for trial June 3rd, 1964, and continued for the defendant, and set for September 28th, 1964. The court records and minutes show that Hale Brown was appointed by the Court on September 24th, 1964. However, the Court finds that Hale Brown had contact and numerous conferences with the defendant McQueen on the charge that was laid against him in the City of St. Louis as well as on the charge laid against him in Jefferson County, and that said representation by Hale Brown started in the fall of 1963. The Court finds that Hale Brown made numerous trips to Hillsboro in behalf of his client, Roger McQueen, and the Court finds that he conferred with the Movant McQueen not only about the case pending against him in Jefferson County but also the case pending against him in St. Louis, and this was long before September 24th, 1964. The appointment as shown in the court records of September 24th, 1964, was made by the Court at Mr. Hale's request and was with the prior knowledge and consent of the defendant, so actually defendant was represented by an attorney of his own choice. The defendant knew long before the trial of the case at bar that Mr. Brown was going to represent him and knew days before that the case was going to trial. Mr. Brown's handling of the case before his formal appointment by the Court is further evidenced by the fact that the State on August 25th, 1964, endorsed additional witnesses and mailed a copy of the memorandum of the endorsement to Mr. Brown.
The Court is convinced from the testimony of Hale Brown that the charge of murder pending against McQueen in Jefferson County and the charge of murder that at the same time was pending against him in the City of St. Louis were interrelated at the time, and that the preparation of one in view of all the facts and circumstances necessarily brought about to a large extent the preparation of the other. In view of the fact that the defendant stated to his counsel that he was present at the scene and that he did actually kill the deceased George Francis, and in view of the fact that there was no eyewitness to the actual killing by defendant of George Cooper Francis, it cannot be said that the defendant was inadequately represented. The mere fact that he failed to interview all the witnesses or any of the witnesses on the indictment does not necessarily mean he was negligent in the preparation of the case. It may well have been that he obtained information from other sources. Counsel stated that he did. There is no reason to disbelieve him.
The complaint that Mr. Brown failed to interview a single witness endorsed by the State does not appear to have prevented the defendant from obtaining a fair trial. He testified that he shot George Francis with only the two of them in the room. The issue was one of self-defense.
* * * * * *
In any event, it is not shown that failure to interview the witnesses endorsed by the State prevented the defendant in this case from having a fair trial.
Respondent's Exhibit B, pp. 52-56.
The Missouri Supreme Court commented upon defense counsel's preparation for trial thus:
In this case, the defense was self-defense. The defendant was the only eyewitness available to sustain that *560 defense. Therefore, consultation with the defendant in this case was basically what was required in order to make proper and adequate presentation of the defense.
McQueen, supra at 114.
The evidence adduced at trial showed that petitioner killed Francis in Francis' home with a pistol belonging to Mary Frances Zoeller. Her testimony was that she discovered that the weapon was missing from her automobile in November 1963; that she lives in a house adjoining that of her brother, Conrad Zoeller, who is a dentist; that on two occasions she met petitioner, once when petitioner discussed insurance with her brother and once when petitioner discussed insurance with her; and that she told petitioner she needed no insurance because she carried a gun. Conrad Zoeller testified on direct examination for the state that he did not know George Francis or Donald Cole; that one shirt that petitioner had in his possession when arrested belonged to him and may have been taken from his sister's automobile; and that he had never been in 1325 Goodfellow, the residence of the decedent Francis.
The trial testimony of petitioner tended to construct the defense of self-defense in that petitioner had sought help from Francis in finding a job; that Francis was a homosexual; that when petitioner visited him on October 23 for the purpose of finding a job, Francis became angered because petitioner had disturbed Francis and his male lover the night before; that Francis attempted to sexually abuse petitioner; and that petitioner took the subject pistol from Francis' dresser and fired it at Francis in self-defense, killing him.
Petitioner testified during the 27.26 evidentiary hearing that during the trial he told defense counsel of the existence of certain photographs that showed Conrad Zoeller in homosexual postures. However, defense counsel did not cross-examine Conrad Zoeller on his homosexual tendencies or on his statement that he did not know Francis. Petitioner argues herein that key circumstantial inferences of willfulness and premeditation arose from evidence that petitioner had an opportunity to steal the weapon used in the killing, that he had stolen it, and that he had taken it to Francis' residence. Therefore, to combat this inference, petitioner argues that defense counsel should have cross-examined Conrad Zoeller on his homosexual tendencies and on his disavowal of any knowledge of Francis. In this way petitioner implies that inferences could be construed that the weapon had been in Francis' room other than being brought there by petitioner. Furthermore petitioner explicitly suggests that the fact of Conrad Zoeller's homesexual tendencies could have been used for impeachment purposes. During the 27.26 hearing attorney Brown indicated that he was aware at trial of Zoeller's homosexual background, had considered this, but had opted against using it. The Missouri Supreme Court dealt with the propriety of defense counsel's conduct of the trial thus:
What [27.26] counsel is now saying in effect is that the subject should have been approached differently in the cross-examination. However, this is a matter of second-guessing, not a proper basis for determining whether a defendant had effective assistance of counsel.
[The trial] [d]efense counsel was not particularly pressed on the 27.26 hearing about his failure to investigate the possible relations between the dentist and the deceased and to press the matter. He dismissed the suggestion by saying: "It wouldn't have much to do with shooting a man in the head." Certainly, this is not a wholly unreasonable view. The defense presentation was adequate to eliminate, in the jury's mind, the element of deliberation because it did not convict defendant of murder in the first degree. Furthermore, the jury did not find first degree murder under the felony murder submission of *561 homicide in the commission of a robbery. Premeditation might have existed even though the defendant did take the weapon from the dresser in the apartment.
Ibid. at 115.
Petitioner further alleges that attorney Brown failed to challenge prosecution evidence by police testimony of an out-of-court statement by petitioner that he had not to the best of his knowledge either been in the presence of the deceased or that he had shot him. It is argued that the issues of voluntariness and the necessary warnings were ignored. The Missouri Supreme Court attributed counsel's failure to object when this evidence was first introduced to the possibility that counsel thought some advantage might accrue from it; it did not indicate inadequate assistance. Ibid. The trial record does indicate that counsel was not aware of the relevant objection. Respondent's Exhibit A, pp. 167-168.
Respondent further alleges that attorney Brown failed to object to the testimony of prosecution witness Slaton that he had heard that petitioner had been in Jefferson City and had had a little trouble; at a subsequent bench conference counsel stated that he did not think that this answer was enough to cause trouble, and that he did not want a mistrial. Petitioner's allegation and inference of ineffectiveness of counsel is not supported by the full context of the trial record on this point. The record indicates the following:
Q [by prosecutor] Did you talk about anything?
A [Slaton] Oh, yes. I had heard that he had been in Jefferson City
Q Not what you heard. What did you talk about?
A And I said, "I heard you had a little trouble
MR. BROWN: Just a moment. May I approach the bench? (The following proceedings were had out of the hearing of the jury:)
MR. BROWN: Would you read back the record. You stopped him and I want to hear what actually got in there.
THE COURT: "I heard that he had been in a little trouble."
MR. BROWN: No, he said something about Jefferson City.
THE COURT: Yes, he did. Read that.
THE REPORTER: (Reading) "Oh, yes. I had heard that he had been in Jefferson City".
MR. BROWN: I don't believe that is enough to cause trouble.
THE COURT: What is the purpose of this?
MR. FREDERICKS: I will ask leading questions to be sure that we don't get into it.
MR. BROWN: No, you won't.
THE COURT: Oh, look, pardon me. If you let this witness go, you will get into trouble. What do you want to prove?
MR. FREDERICKS: That he had a conversation with McQueen, and McQueen said that he was going to California. I'll ask him first point blank.
THE COURT: All right. Why don't you ask him?
MR. FREDERICKS: I will.
THE COURT: "And did you ask him where hs was going? And he said California?"
MR. BROWN: Just one more thing. I have a right to cross-examine, and I'll watch myself very closely, but he gave an uncalled for answer, and because of this I am trying to avoid .
THE COURT: Let's not anticipate it.
MR. BROWN: I don't want to.
THE COURT: All right. When you start your cross, tell him just to answer the question, don't volunteer. I'll instruct him.

*562 MR. BROWN: Because I don't want a mistrial, you know that.
THE COURT: Yes.
The interrogation of Slaton thereafter resumed on petitioner's post-killing statement that he was going to California. Ibid. at 81-83. The Missouri Supreme Court accurately indicated the effect of this examination and bench conference thus:
[c]ounsel's objection effectively limited any further testimony by the witness on the subject [of petitioner's criminal record]. In any event, when defendant took the stand, he revealed all of his prior convictions. Trial counsel, knowing his strategy, could well have felt that there were no real grounds for making an issue of the witness's unresponsive remarks.
McQueen, supra, 475 S.W.2d at 115.
Petitioner asserts that trial counsel examined him at length about the occurrences in Francis' bedroom surrounding his death and that said testimony was difficult to follow without a diagram. While it is true that petitioner's testimony may have been easier to follow at trial with a diagram, the failure to use such a graphic aid does not indicate ineffective assistance of counsel.
The last direct factual allegation by petitioner is in regard to counsel's phrasing of the motion for a new trial. A basis for the motion was the trial court's alleged error "in giving an instruction on the commission of a homicide while the defendant was committing a burglary . . . . (emphasis added)." Instruction 2-A used the word "robbery", not "burglary". The Missouri Supreme Court considered this discrepancy "trivial and inconsequential." State of Missouri v. McQueen, 431 S.W. 2d 445, 450 (Mo.1968).
Petitioner has voiced no objection that the state 27.26 hearing process was unfair or incomplete, either in his petition or in his traverse to the response. Rather, he states in his traverse that "[a] trial undertaken with counsel who has made no investigation or interviewed witnesses amounts to no defense at all and becomes a sham falling far short of the Constitutional Standard of a fair trial." Petitioner then refers to Judge Seiler's dissent from the opinion of the Missouri Supreme Court en banc, found at 475 S.W.2d 120-124. This Court finds that petitioner did receive a full and fair hearing in the state courts regarding the issue raised herein and that no evidentiary hearing in this Court is necessary or required by Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).
Relief from a criminal conviction will be granted on the basis of ineffective assistance of counsel "only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court." Cardarella v. United States, 375 F.2d 222 (8th Cir. 1967), cert. den. 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176 (1967); see Slawek v. United States, 413 F.2d 957 (8th Cir. 1969).
Petitioner's main attack on the effectiveness of his counsel is made by way of his assertion of inadequate trial preparation. The Missouri 27.26 court found that defense counsel expended a substantial amount of effort in preparing for trial on the St. Louis murder charge, and that this trial preparation began well in advance of counsel's formal appointment. Counsel had spoken at length with the only eyewitness to the killingpetitioner himself. Counsel's failure to interview prosecution witnesses, although an admittedly normal practice for him, and his failure to visit the scene of the crime were, nevertheless, the results of the exercise of his judgment.
Petitioner implies that the defense of self-defense could have been better substantiated by a strong cross-examination of Conrad Zoeller. Yet counsel was aware at trial of Conrad Zoeller's homosexual tendencies, he was *563 aware of Francis' homosexual background, and he was aware that Conrad Zoeller may have known the deceased Francis.
Trial preparation, as much as the conduct of the trial itself, is a matter for the exercise of counsel's judgment based upon his knowledge or ignorance of the facts of his case. Whether or not petitioner received ineffective assistance of counsel must be determined from the circumstances and facts of this particular case. Goodwin v. Swenson, 287 F.Supp. 166, 182 (W.D.Mo.1968). The record does not sufficiently show that defense counsel was ignorant of relevant facts, which did exist, so to render his failure to interview prosecution witnesses or to visit the scene of the crime indicia of ineffective assistance of counsel. It has been said that the exercise of an attorney's professional judgment should not be second-guessed from a position of hindsight. Robinson v. United States, 448 F.2d 1255 (8th Cir. 1971); Schaffer v. Swenson, 318 F.Supp. 51 (E.D.Mo.1970), aff'd by unreported opinion, 8th Circuit, November 22, 1971, cert. den. 404 U.S. 944, 92 S.Ct. 296, 30 L.Ed.2d 259 (1971); Churder v. United States, 294 F.Supp. 207 (E.D.Mo.1968), aff'd 417 F.2d 633 (8th Cir. 1969). This rule is eminently applicable to a case, such as this one, where counsel's exercise of judgment is demonstrably based upon substantial knowledge of the facts of his client's case.
Counsel's failure to object to police testimony of a certain out-of-court statement by petitioner made while in police custody may well have been improvident. This statement, however, was exculpatory in nature rather than directly incriminating. Its prosecution value lay in its tendency to impeach petitioner's veracity in light of his later in-court admission that he killed Francis. The issue is whether or not counsel was ineffective because the statement came into evidence without objection, not whether or not the conviction must fall because the statement was not shown to have been voluntarily and knowledgeably made.
In United States ex rel. Chambers v. Maroney, 408 F.2d 1186 (3rd Cir. 1969), the Court upheld the federal district court's ruling in a habeas corpus action that the admission of certain revolver shells into evidence, without the filing of a pre-trial motion to suppress, did not entitle the petitioner to relief because any error in receiving such evidence would only have been harmless, citing Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Chambers, supra, 408 F.2d at 1194. The Court did rule, however, that the shells were properly in evidence. Ibid. at 1195. In affirming this decision the United States Supreme Court said that the Court of Appeals
had . . . ample grounds for holding that the appearance of a different attorney at the second trial had not resulted in prejudice to petitioner. The claim that Mr. Tamburo was unprepared centered around his allegedly inadequate efforts to have the guns and ammunition excluded from evidence. But the Court of Appeals found harmless any error in the admission of the bullets and ruled that the guns and other materials seized from the car were admissible evidence. Hence the claim of prejudice from the substitution of counsel was without substantial basis.
Chambers v. Maroney, 399 U.S. 42, 53-54, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 (1970). The receipt of the instant petitioner's out-of-court statement into evidence without objection was, due to the nature of the statement and the other evidence in the case, harmless, if it was error, and did not prejudice petitioner's case. Counsel's failure to object does not indicate ineffective assistance which violates the Constitution of the United States.
Defense counsel's failure to move for a mistrial when witness Slaton referred to "Jefferson City" and "a little trouble", his failure to use a diagram *564 when examining petitioner on the circumstances of the killing, and his substitution of "burglary" for "robbery" in the motion for a new trial [indicating that he did not read the Court's instructions before preparing his motion for a new trial] do not, either individually or together with the other alleged errors of counsel, support the allegation of ineffective assistance of counsel.
In consequence, the Court finds no merit in petitioner's claim and will dismiss the action.