Roscoe THOMAS, Appellant,

v.

STATE of Missouri, Respondent.

No. KCD 27151.

Missouri Court of Appeals,
Kansas City District.

Dec. 2, 1974.

Dale R. Copeland, Raytown, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

Appellant (hereinafter referred to as movant) was found guilty of First Degree Robbery and was sentenced by the court under the Second Offenders Act to fifteen (15) years. His conviction was affirmed on direct appeal. State of Missouri v. Thomas, 491 S.W.2d 328 (Mo.1973). He thereupon filed a *pro se* motion under Rule 27.26, V.A.M.R., to vacate and set aside this conviction, in which he alleged that his constitutional rights had been violated and he had not been afforded a fair trial because (among other grounds asserted but not pertinent here) he was deprived of effective assistance of counsel. New counsel was appointed for movant and an evidentiary hearing was held in the court below, at the conclusion of which the trial court made findings of fact and conclusions of law and denied post conviction relief. This appeal followed in due course and in proper form.

The transcript of the trial in the criminal case was offered as an exhibit in the

evidentiary hearing on the Rule 27.26 motion and is before this court. It has been carefully studied and it is necessary to the determination of this matter that some of the facts there disclosed be reviewed.

On March 29, 1971, at 12:45 p. m., two black males, one armed with a shotgun and one with a handgun, entered the Regal Pharmacy at 2462 Brooklyn, Kansas City, Missouri, and held up the owner, James Neal, and the clerk, Sarah Harris. During the course of the robbery, a Dr. Marion Jones entered the store and was also restrained by the robbers. The two men secured the contents of the cash register, Mr. Neal's personal funds, a check protector, a .32 caliber revolver, an amount of narcotics and other drugs, Doctor Jones' personal funds and his watch, and fled the store on foot.

On April 8, 1971, the movant was arrested in connection with a homicide and thereafter confined in jail. No homicide charge was ever filed against him, but during his confinement he was identified in a lineup by Neal, Harris and Jones as one of the robbers of the Regal Pharmacy, and on May 4, 1971, he was charged by information with first degree robbery, which information was amended before trial to bring the charge under the Second Offenders Act.

On the day of his arrest, he was in contact with counsel, a member of the Legal Aid and Public Defenders staff, who represented him throughout the course of the criminal proceedings and subsequent appeal. Part of this representation consisted of filing a Motion to Suppress the lineup and in-court identification by the state's witnesses. Also, movant's counsel filed a Motion to Suppress Illegally Obtained Evidence from an Unlawful Arrest. In this latter connection, an officer testified that when movant was arrested, while operating a borrowed automobile, he observed in "plain view" a shotgun and a handgun in

the automobile movant was driving. Although the record is unclear on this point, apparently the police also found a quantity of heroin as an incident to the arrest.[1]

Hearings were had in the court below before the commencement of the trial on both of these motions, and both were overruled.

The record of the trial of the robbery charge clearly demonstrates that the state's whole case hinged upon the identification of the movant by witnesses Neal, Harris and Jones as one of the robbers of the Regal Pharmacy on March 29, 1971, and the sole defense presented was the vigorous efforts of movant's counsel to discredit this identification. Upon appeal from the conviction, the grounds urged as error were the trial court's action in overruling movant's motion to suppress "all evidence obtained by the police department following appellant's (movant's) arrest"; that the arrest was without probable cause and that, therefore, the identification of appellant (movant) at the lineup and "all the evidence that appellant had committed the robbery was the fruit of the arrest and should have been suppressed." State v. Thomas, supra, at l. c. 329. In affirming the conviction, the Supreme Court held, even though the officers did not have probable cause to arrest movant for homicide, that the identification of the movant by Neal, Harris and Jones emanated from a source independent of the arrest by means sufficiently distinguishable to purge such identification from any taint. State v. Thomas, supra, at l. c. 330–331. Such determination effectively disposes of all of movant's points in his Rule 27.26 motion, except that which asserts deprivation of his constitutional right to effective assistance of counsel.

Movant testified at the evidentiary hearing on his amended motion under Rule 27.-26 that on March 29, 1971, the date of the armed robbery of the Regal Pharmacy, for

---

1. It should be noted, however, that the state did not offer any of these items into evidence at the trial of the robbery charge.

which he was convicted, he was employed as a driver by the Palace Cab Company, which company was "leased" by one Webster Drummond. He stated that on March 29, 1971, he was working at his job and that at about noon on that day, he secured a fare for transportation from Kansas City to Leavenworth, Kansas, whose name was Charlotte Ann DeGraffenreid. He returned to Kansas City from this trip at 2:15 p. m. He further testified that he gave his trial counsel the names of Mr. Drummond and one David Lloyd, also connected with the Palace Cab Company, as persons who would be helpful in his defense, obviously because if the trip to Leavenworth and the times could be established, he could not have participated in the robbery at 12:45–1:00 p. m. Although he did not specifically so state, it would be reasonable to assume that he also gave his counsel the name of his fare, De-Graffenreid, or (since movant knew her identity) that counsel could have obtained her name by minimal inquiry. Movant testified that to his knowledge, his trial counsel made no attempt to contact these individuals.

The movant further testified that his counsel had advised him of his right to testify and he had expressed his desire to do so. His counsel "explained" that he was being tried under the "Habitual Criminal Act" and if he testified "they would be able to bring up my prior convictions" and "if I was found guilty, then that would give the jury, you know, grounds to impose sentence". Movant stated that his counsel told him that if movant testified "he (counsel) wouldn't be able to try it (the case) as he had planned to". There was no agreement between him and his attorney as to whether or not he would testify.[2]

Movant testified on the Rule 27.26 motion that his then counsel was first seen the day of his arrest on April 8, 1971, and the record discloses that he continued to represent the movant throughout the trial and appeal of the underlying case; that between the time of his arrest until trial, he conferred with his counsel "at least six" times; and that most of their discussions were relative to "the motion that he was going to file to get the case dismissed.".

Movant's counsel testified at the Rule 27.26 hearing that movant had advised him that he was working on the date of the robbery for "some cab company"; that movant gave him the names of a "cab driver" and "somebody else"; but that he made no effort to contact these persons. Counsel gave as his reason for failing to do so, the fact that at the time the movant was also charged with the possession of heroin which was found in the car at the time of his arrest on April 8, 1971. Counsel had filed a motion to suppress this evidence on the grounds of an unlawful arrest and search and seizure; that such motion was filed and heard by another division of the Circuit Court of Jackson County, Missouri before any hearings in the case here involved and that division sustained the motion and dismissed the narcotics charge. Counsel stated that he thought the arrest was unlawful and made with no probable cause, and that therefore, the subsequent search and seizure, subsequent lineup and identification, were illegal and "that is the reason I didn't contact those other two people.".

"Q. There was no effort by you or your investigative staff, the Public Defender's office, to contact these persons?

A. No."

He further testified that he had advised the movant of his right to take the witness stand, but that in his best professional judgment, movant should not do so. The only witness he used in defense was a

---

2. The transcript of the trial on the robbery charge contains no reference or record of the movant's (defendant's) wishes or decision as to whether he would take the witness stand. He did not take the stand (before the jury) in that trial.

member of the Sheriff's staff, William Turner.[3]

The court below in overruling movant's amended Rule 27.26 motion made Findings of Fact pertinent to this proceeding, which may be summarized as follows: that movant testified he was employed as a cab driver on March 29, 1971; that he gave his counsel the names of two witnesses who movant argues would have supported an alibi defense; that movant's counsel made no attempt to contact these witnesses nor were they contacted or interviewed prior to trial; that counsel made no attempt to establish an alibi defense; and that no evidence was presented on the motion to vacate as to the whereabouts or availability of these witnesses, or the knowledge any of them might have. As pointed out above, all of these findings of fact were supported by the evidence and were proper.

The court below, however, made Conclusions of Law upon these facts which bear close scrutiny under the present state of the law namely:

"1. Movant has not sustained the burden of showing that on a retrial there would be evidence which is substantial and which was not available at the original trial because of any failure to interview witnesses or to properly investigate. Jones v. State (Mo.), 491 S.W.2d 233; McQueen v. State (Mo. en banc), 475 S.W.2d 111; Mace v. State (Mo.), 452 S.W.2d 130, 136.

2. Movant had a fair trial and was not denied effective assistance of counsel."

■ The firm constitutional right to counsel under the Sixth Amendment of the Constitution of the United States, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), is strengthened and buttressed by the equally necessary corollary that a defendant is constitutionally vouchsafed the right to *effective* assistance of counsel, including the investigation and preparation of his case for trial. This precept is implicit in *Gideon* and was stated in Powell v. Alabama, 287 U.S. 45, (the Scottsboro case), at 53 S.Ct. 55, 1. c. 59–60 [4], 77 L.Ed. 158 (1932), as follows:

"* * * In any event, the circumstance lends emphasis to the conclusion that during perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their arraignment until the beginning of their trial, when *consultation, thoroughgoing investigation and preparation were vitally important,* the defendants did not have the aid of counsel *in any real sense,* although they were as much entitled to such aid during that period as at the trial itself. * * *" (Emphasis supplied)

In Coles v. Peyton, 389 F.2d 224 [3], 1. c. 226 (4th Cir.—1968), the court defined the duty of counsel to protect this constitutional right, as follows:

"* * * Counsel must conduct appropriate investigations, both *factual* and legal, *to determine if matters of defense can be developed,* and to allow himself enough time for reflection and preparation for trial. *An omission or failure to abide by these requirements constitutes a denial of effective representation of counsel * * *"* (Emphasis supplied)

See also: Jones v. Cunningham, 313 F.2d 347, 353 [4] (4th Cir.—1963); American Bar Association's Project on Standards for Criminal Justice in its Standards Relating to the Prosecution Function and the Defense Function, Part IV, Investigation and Preparation, 4.1—Duty to Investigate, p. 161 (1971).

The difficulty in the application of this principle is obvious. The courts have en-

---

3. The transcript discloses that Turner identified police photographs of Thomas and the two other prisoners in the lineup. Again, this was an attempt by counsel to attack the validity of the identification.

deavored to establish some standards, but without significant or consistent results, within which the representation of counsel in the area of investigation and preparation can be gauged as either effective or ineffective. The courts of this federal circuit and of our state courts early adopted a standard that in order to obtain post conviction relief upon the constitutional ground of ineffective assistance of counsel, whether by authorized motion or habeas corpus, the record should disclose that such representation (or lack of it) made the trial "a farce and a mockery of justice, shocking to the conscience of the Court.". Cardarella v. United States, 375 F.2d 222 (8th Cir.—1967) [13]; Cross v. United States, 392 F.2d 360 (8th Cir.—1968) [9]; Garton v. State, 454 S.W.2d 522, 530 [9] (Mo.1970).

■ There has been a gradual erosion of this harsh rule, however, in both Missouri and in this federal circuit, so that the better rule seems presently to be that if the action (or inaction) of counsel were of such a character as to result in a substantial deprivation of defendant's constitutional right to a fair trial, relief should be granted. McQueen v. State, 475 S.W.2d 111 (Mo. banc 1971); Tucker v. State, 481 S.W.2d 10 (Mo.1972); Jones v. State, 491 S.W.2d 233 (Mo.1973); Thebeau v. State, 491 S.W.2d 275, 277 [1] (Mo.1973).

Other courts have abandoned the "mockery of justice" standard and declared that the representation by counsel in order to be termed effective must rise at least to a level of "normal" or "reasonable" competency. United States ex rel. Green v. Rundle, 434 F.2d 1112 (3rd Cir.—1970); King v. Beto, 429 F.2d 221 (5th Cir.—1970); Coles v. Peyton, supra, 389 F.2d 224 (4th Cir.—1968); United States v. DeCoster, 159 U.S.App.D.C. 326, 487 F.2d 1197 (1973).

While this federal circuit has not, as yet, repudiated the terms of the "farce and mockery" rule as enunciated in *Cardarella* and *Cross*, it has softened its literal appli-

cation. In McQueen v. Swenson, Warden, 498 F.2d 207, l. c. 214 [4] (CCA 8—1974), the court said:

"Stringent as the 'mockery of justice' standard may seem, we have never intended it to be used as a shibboleth to avoid a searching evaluation of possible constitutional violations; nor has it been so used in this circuit. It was not intended that the 'mockery of justice' standard be taken literally, but rather that it be employed as an embodiment of the principle that a petitioner must shoulder a heavy burden in proving unfairness. * * *"

The Supreme Court of Missouri in Anderson v. State, 487 S.W.2d 455, l. c. 460 [4] (Mo.1972) [quoting with approval from Robinson v. United States, 448 F.2d 1255, l. c. 1256 (8th Cir.—1971)] stated:

" * * * 'In order to assert a Sixth Amendment infirmity on this ground, the circumstances must demonstrate that which amounts to a lawyer's deliberate abdication of this ethical duty to his client. There must be such conscious conduct as to render pretextual an attorney's legal obligation to fairly represent the defendant.' * * *"

Within the framework of these broad and fluid precepts, each case wherein ineffective assistance of counsel is asserted, must necessarily be decided upon the facts of that case. Before discussing the facts in the record here, a short summary of the "McQueen saga" is in order.

Roger Lee McQueen was convicted of murder in the second degree and was sentenced to life in prison. On direct appeal, this conviction was affirmed. State v. McQueen, 399 S.W.2d 3 (Mo.1966). This affirmance was thereafter set aside because McQueen had not been represented by counsel on the appeal and the case was resubmitted and the conviction again affirmed. State v. McQueen, 431 S.W.2d 445 (Mo.1968).

Before the appellate decision, McQueen had filed a motion in the trial court under Rule 27.26 for post conviction relief, in which he claimed (among other things) that he had been deprived of effective assistance of counsel at his trial. This averment was based upon the fact that his counsel had not interviewed any of the 41 *state witnesses* endorsed on the indictment, 25 of whom had been used as witnesses by the state at McQueen's trial. The state's case was based entirely on circumstantial evidence and, although McQueen admitted shooting the murder victim, he asserted that he had done so in self-defense. At the evidentiary hearing held subsequent to the mandate in the appeal, McQueen's trial counsel testified and freely admitted that he interviewed none of the 41 witnesses, and that this was a "matter of policy" with him, in that he never interviewed the state's witnesses in any case. The trial court denied relief and McQueen appealed. The judgment was affirmed, McQueen v. State, 475 S.W.2d 111 (Mo.1971), by a divided court.

McQueen applied for habeas corpus in the federal district court, which court denied relief without any additional hearing. McQueen v. Swenson, 357 F.Supp. 557 (E. D.Mo.—1973). Upon appeal, this denial was reversed and the cause remanded to the district court for further evidentiary proceedings. McQueen v. Swenson, 498 F.2d 207 (8th Cir.—1974). It should be noted that this McQueen decision was filed on June 4, 1974, long after the evidentiary Rule 27.26 hearing in the court below and after all briefs were filed in this case in this court.

After stating that the record was clear, that counsel had not interviewed or attempted to interview any of the state's listed witnesses, and that his sole preparation for the defense of his client on a first degree murder charge was to interview the defendant, the court concluded that in those circustances such "lack of pretrial investigation amounts to ineffective assistance of counsel". (l. c. 213 [2]).

■ Viewing this record, it must be concluded that here, also, counsel failed to perform his duty to investigate and prepare his client's defense, and thus deprived movant of his constitutional right to effective assistance of counsel.

Assuming that movant's testimony at the Rule 27.26 evidentiary hearing was based upon facts, the movant gave his counsel the names of two witnesses who, he asserted, could establish an alibi, and the name of a third (the alleged passenger to Leavenworth, DeGraffenreid) if not, in fact, relayed to counsel could have been easily discovered. However, counsel made no effort to locate and interview them.

Movant's employment records, trip sheets and time and pay records, were perhaps available at the Palace Cab Company as documentary evidence, but counsel made no effort to obtain them.

The discovery and availability of such facts could well have influenced movant's and counsel's view as to whether or not the movant should testify in his own defense. In this connection, it should be noted that if the conversation between movant and his counsel with regard to the Second Offenders Act and the assessment of penalty did take place, movant undoubtedly was misled thereby since he was already charged under the Act, and in no event, whether he testified or not, could the jury have assessed his penalty. That became and was the sole duty of the court, which already knew of his prior convictions. Additionally, if the evidence was available, the alibi defense could have been established by the witnesses and documents even though the movant did not testify.

Counsel testified that he had made no investigation of the alibi defense nor attempted to find and interview witnesses who might establish or corroborate that defense because he had earlier prevailed in a motion to suppress evidence and identification and secured the dismissal of a narcotics charge against movant, arising from the same arrest and search and seizure in-

volved here. This reason is entirely specious.

The former proceedings were before another court of the Sixteenth Circuit and in an entirely separate proceeding. There are 17 divisions of that circuit and although undoubtedly each extends to the others all appropriate courtesy and respect, there can be no assurance that identical views or rulings will come from each such court, even upon the same facts. At least, the separate functioning and independence of each court should warn careful counsel that expected unanimity of opinion and rulings is not assured. Certainly, such expectation afforded no sufficient reason to forego movant's constitutional right to effective representation and a fair trial, if the charge were not dismissed on motion to suppress as the prior proceeding had been in another court. The ruling of the first court had no binding effect upon the court below. While counsel may have had high hopes that he could secure the same ruling, the defense of his client by meeting his clear obligation to investigate and prepare, should have proceeded upon the assumption that such favorable ruling might not be forthcoming.

The hearing on the motions to suppress the identification and evidence were held on July 6, 1971 and July 7, 1971, and both were overruled and the case proceeded immediately to trial on July 7, 1971. If counsel was surprised by this ruling, such fact is not disclosed on the record. He made no motion or application for continuance so that he could prepare his defense of alibi on the basic charge but proceeded without objection to trial, concentrating his defense entirely (and ably) in an attack upon the validity of the identification evidence. As noted above, the state made no offer of the evidence sought to be suppressed for reasons which do not appear.

The principle that the exercise of an attorney's professional judgment or his trial strategy should not be "second-guessed" by hindsight in an appeal or other proceeding, is a sound and salutary one and is not weakened or diminished by what has here been stated. It simply has no application to the situation disclosed in this record. The failure of counsel to pursue the obvious line of investigation of the alibi defense but rather to rely upon his pretrial motions and forensic courtroom abilities was inimical to the best interests of his client. He had no evidentiary facts on the alibi defense upon which to exercise his professional judgment nor determine trial strategy, including the vital decision as to whether or not movant should be proffered as a witness in his own behalf. United States v. DeCoster, 159 U.S.App.D.C. 326, 487 F.2d 1197, 1201 [4–6] (1973).

The gamble of counsel, that his pretrial motions would be sustained and the case dismissed, was a dangerous one and resulted in a deprivation of movant's constitutional right to effective assistance of counsel in his trial.

The determination of this constitutional flaw in movant's trial and conviction does not, however, solve the problems which still confront this and the trial court. What are the proper procedures which now should follow?

The remaining problem is pointed up by the statement of the court in McQueen v. Swenson, 498 F.2d 207, 218 [8], l. c. 218 (8th Cir.—1974), where the court said:

"* * * Evaluation of a habeas corpus petition (Rule 27.26 motion) alleging ineffective assistance of counsel is a two-step process: first, determining, as we have already done, whether there has been a failure to perform some duty, as essential as the duty of investigation, owed by a defense attorney to his client; and *second, determining, as will be done on remand, whether that failure prejudiced his defense.* * * *" (Material in parenthesis and emphasis supplied)

The court in the last *McQueen* decision (498 F.2d 207) pointed out that "as a constitutional error, ineffective assistance of

counsel is *sui generis*" and is not one of the fundamental constitutional faults like the complete absence of any counsel; that some showing or proof of the constitutional error must appear and that the burden of proof is an important, and perhaps vital factor.

On the matter of burden of proof, the state and federal courts have heretofore taken diverse and often opposite views. Some federal cases placed the burden on the government to show a lack of prejudice [Coles v. Peyton, supra (4th Cir.—1968); United States v. DeCoster, supra (D.C.Cir.—1973)] while others place the burden generally upon the defendant [Moore v. United States, 432 F.2d 730 (3rd Cir.—1970); United States ex rel. Greene v. Rundle, supra (3rd Cir.—1970)] but recognize certain exceptions, as hereinafter noted in McQueen v. Swenson, supra. The recent Missouri decisions have, for the most part, placed the burden of showing prejudice by reason of ineffective assistance of counsel upon the defendant. Mace v. State, 452 S.W.2d 130, 132 [1] (Mo. 1970); State v. Brown, 449 S.W.2d 664, 666 [1] (Mo.1970); Monteer v. State, 506 S.W.2d 25, 27–28 [7, 8] (Mo.App.1974).

The court in *Rundle,* supra, pointed out that a "change in circumstances" between the time of trial and the hearing on post conviction relief (such as the death of a witness) may make it "impossible to determine accurately the presence or absence of prejudice". Further, the court said in *Rundle* that the "ineffective assistance of counsel may have had so pervasive an effect on the process of guilt determination that it is impossible to determine accurately the presence or absence of prejudice.". The *Rundle* court said, "In such instances a finding of departure from the standard of normal competence requires without more, a new trial" but that "it is reasonable, we think, to put on petitioner the burden of showing that the missing evidence would be helpful.". (State ex rel. Green v. Rundle, 434 F.2d at 1115). The court in

McQueen v. Swenson, supra, adopted this rule in *Rundle* and stated, 498 F.2d at p. 220:

"We believe a flexible approach, similar to that in *Rundle,* is called for. We ought not to intervene in the criminal process unless and until it can be shown that the alleged error itself prejudiced the petitioner in obtaining a fair trial. But this is *not* to say that, on remand, petitioner must prove his innocence even by so much as a preponderance of the evidence; nor should we be understood to suggest that the Court may trespass upon what properly would have been the jury's province of weighing the truth or falsity of this evidence at the original trial. What we are saying is that, here, the petitioner must shoulder an initial burden of showing the existence of admissible evidence which could have been uncovered by reasonable investigation and which would have proved helpful to the defendant either on cross-examination or in his case-in-chief at the original trial. Once this showing is made, a new trial is warranted unless the court is able to declare a belief that the omission of such evidence was harmless beyond a reasonable doubt. Cf. Chapman v. California, supra.

In lieu of such a showing, we hasten to add, the defendant must be allowed to demonstrate that changed circumstances beyond petitioner's control have made it impossible to produce any helpful evidence at this time. The latter circumstances, if proved, would serve to shift to the state the burden of showing the absence of any prejudice in the trial because of the inadequacy of defendant's counsel." (Emphasis the court's)

█ Under the circumstances in the case at bar, and in the light of the controlling principles delineated in McQueen v. Swenson, 498 F.2d 207 (8th Cir.—1974), the judgment of the court below is reversed and the cause remanded for further

evidentiary hearing on the issue of whether or not prejudice flowed to the movant by reason of the failure of his counsel to make a reasonable investigation of his defense of alibi. Thereupon, the court below should either sustain the Rule 27.26 motion and grant the movant a new trial, or again overrule such motion, making such judgment within the limitations and according to this opinion.

Reversed and remanded with directions.

All concur.